THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No. _8:05-cv-01015-scb-mss

Honorable Susan C. Bucklew

David Bosset, Spring Hill, Florida;
Carel (Chad) Prater, Sarasota, Florida;
Alex Petroski, St. Petersburg, Florida;
Donna Gwinn, St. Petersburg, Florida;
Sheri Redeker-Barry, Fort Myers, Florida;
Warren Barry, Fort Myers, Florida;
Douglas Pfeiffer, Spring Hill, Florida;
Ralph Schlosser, Clearwater, Florida;
Scott Sorenson, Sarasota, Florida;
Gary Kafka, Ocean Ridge, Florida;
Cyrus Luley, Cape Canaveral, Florida;
George Kalivretenos, Winter Park, Florida;
Perry Ekstrand, Yankeetown, Florida;
Debra Ekstrand, Yankeetown, Florida;
Harry McKay, Tampa, Florida;
Kenneth Guthery, Tampa, Florida;
Henry Mulder, Lakeland, Florida;
Carl R. Tucker, Tampa, Florida;
Ronald Galan, Palmetto, Florida;
Pamela Galan, Palmetto, Florida;
R. Steve Roberts, Tampa, Florida;
Rose Charboneau, Ocala, Florida;
Glenda P. Cranwill, Belleview, Florida;
Paul Laird, Hernando, Florida;
Kenneth Thompson, Belleview, Florida;
Gary McCauley, Winter Springs, Florida;
Charlene McCauley, Winter Springs, Florida;
Ken Schrems, Palm Harbor, Florida;

FILED

2006 MAR 23   AM II: 14

CLERK U.S. DISTRICT COURT
TAMPA, FLORIDA

Kay Schrems, Palm Harbor, Florida;
Bob Hurt, Clearwater, Florida;
Page Shuff, Miami, Florida;
Neil Gunsalus, Okeechobee, Florida;
Moses S. Gingerich, Sarasota, Florida;
James S. Farnell, Lake Worth, Florida;
Jimmy Heard, Lake Placid, Florida;
Milton McIlwain, Orlando, Florida;
Gene A. Webb, Orlando, Florida;
Wanza M. Webb, Orlando, Florida;
Frank Kuncz, Jr. Largo, Florida;

Plaintiffs,
Jointly and Severally

v.

Internal Revenue Service, a private corporation,

Defendant
_____/

## PLAINTIFFS' MOTION FOR RECONSIDERATION OF
## ORDER OF DISMISSAL
## AND
## PLAINTIFFS' THIRD MOTION FOR CLARIFICATION

COMES NOW, Plaintiff David Bosset (Bosset) demanding Reconsideration of the Order

of Dismissal and Plaintiffs, hereby request the findings and conclusions on the following issues

of law that form the basis of the Order of Dismissal. True, explanations were given allegedly

justifying the decision, however, the Court ignored many of the allegations; case law cites from

the U.S. Supreme Court, laws of Congress and the resulting regulations that appear on the record made by the Plaintiffs and left un-refuted and un-addressed by the Defendant, thus to be construed in the Plaintiffs favor.

Plaintiff will address the items needing clarification consistent with this Court's previous refusal to provide clarification (Doc. No. 50). In that Order (Doc. No. 50) the Judge stated that the Clarification must be relevant to an Order that the Court has entered. Inasmuch as the Court has dismissed this case, in favor of the Defendant, a reasonable person would assume that every issue that has been raised by the Plaintiffs has been fully considered in that Order. Therefore, the Plaintiffs request that that this Court offer Clarification, as requested in Doc. No. 47 and Doc. No. 48. Inasmuch as a decision has been made by this Court on each item raised in the previous Motions for Clarification, findings of fact and conclusions of law consistent with the questions raised for Clarification in Doc. No. 47 and Doc. No. 48 would be in order and expected from the Court at this time.

A review of the Order of Dismissal and the collective orders from this Court reveals that this Court is apparently incapable of providing "judicial" decisions of a true Article III court but issues decisions consistent with their formation as an Article I or IV Administrative Court.

Previously decided U.S. Supreme Court cases have been ignored, the laws passed by Congress have been derided or otherwise ignored and the unfounded aberration and distortion of

this nations laws by the IRS has been venerated, as if the IRS can do no wrong. This has been further exasperated by the Court's unfounded reliance on undocumented alleged facts that remain unfounded in fact on the record, as well as the Courts refusal to follow the Court rules as published, and the refusal to conform to the alleged Oath of Office taken by Judges.

In addition to the clarifications presented in Doc. No. 47 and Doc. No. 48, Plaintiffs submit the following items for Clarification consistent with the Judge's decision in the Order to Dismiss (Doc. No. 50).

The following paragraphs will address the Order Point by Point.

1. In the Background section the Court repeated the Plaintiff's allegation that the Internal Revenue Service (IRS) was a private corporation. Plaintiff notes that the assertion was repeatedly made and that the assertion was never refuted by any offer of proof from the IRS or DOJ, yet the Court has continuously made the assumption that the IRS is an agency of the Federal Government. Title 31 USC Subtitle I, Chapter 3, Subchapter I, Organization, Sections 301 through 312 makes no reference to the IRS as part of the Treasury Department. The IRS has not even been made a bureau of the Treasury Department as Congress made FinCEN a Bureau of the Treasury Department at 31 USC § 310. No other reference, regarding the IRS creation, in the USC is known to exist. It appears that this Court is assuming that "everyone knows" that the IRS is an agency. Plaintiffs do not "know" and have

repeatedly demanded that proof be placed on the record. Without proof on the record of IRS

Agency status, the IRS is not entitled to representation by the Department of Justice (DOJ), as

repeatedly asserted by Plaintiffs since the Original Complaint.

2. Judge Bucklew has consistently ruled as if the IRS was an agency of the Federal Government.

Question: Is this assumption by Judge Bucklew evidence of her personal and Administrative

Court bias when she ignores the lack of evidence on the record of IRS's agency status? **If not,**

**why not?**

3. In *Chrysler v Brown*, 441 U.S. 281 the U.S. Supreme Court referenced the lack of evidence

that IRS was an agency of the Federal Government. Did this Court somehow find that this

assertion by the U.S. Supreme Court in the *Chrysler* decision, is a decision to be over-ridden

by this administrative acting Court's bias and unsupported assumptions? Is the U.S. Supreme

Court determination in *Chrysler v. Brown supra* a controlling statement to this Court? **If not,**

**why not?**

4. Does this Court somehow believe that because of Congress's failure to act in the creation of

the IRS that it (Congress's obvious mistake, in the Court's opinion) can be overcome by

judicial activism and assumption, instead of absolute fact and evidence presented on the

record that refutes the allegations presented by the Plaintiff? Please explain, using facts

presented in the record, why IRS is entitled to representation by the DOJ. As no facts exist on

the record, has this Court dishonored Plaintiff's Motion to Strike DOJ responses? **If not, why not?**

5. The Court references the claimed billions in damages. Congress passed the law determining the "value" of violation of the Privacy Act. The Plaintiffs have submitted their calculation of the damages based on the laws of Congress at 26 USC 7431. The Defendant has not refuted the calculation. Is the calculation correct? **If not, why not?**

6. "Substantive Regulation" relative to 26 U.S.C §§ 6700 and 6701. The U.S. Supreme Court held that the "substantive regulation" requirements of the Administrative Act (APA) were valid in *Chrysler v. Brown supra* and that actions without "substantive regulation" were "VOID", as the Supreme Court held in *State of Ohio DHHS v. U.S. DHS*, 862 F.2d 1228. The U.S. Supreme Court has declared that its rulings are binding on the inferior courts. Is this Court an inferior court relative to the U.S. Supreme Court? Are U.S. Supreme Court rulings automatically binding on this Court and are they to be relied upon by the Plaintiffs? **If not, why not?**

7. The 26 U.S.C. §§ 6700 and 6701 determination by Townshend was referenced. Townshend refused to provide Due Process and did not attend a Due Process Hearing to explain his determination when demanded by Bosset. Has this Court determined that Bosset has somehow lost his right to Due Process? **If it was lost, how was it lost?**

8. This Court then issued an Order of Protection that prevented discovery when Bosset attempted to depose Townshend to obtain the answers that Townshend had voluntarily refused to provide. Was the Order of Protection issued by the Court a further denial of Bosset's Due Process? **If not, why not?**

9. The lack of "Substantive Regulation" relative to 26 U.S.C §§ 6700 and 6701 is a positive indicator and indicative that the attendant regulations apply to certain individuals, i.e., a class of individuals, including federal employees and other governmental employees, not private individuals (such as the Plaintiffs). Only that "class" is effected by the regulations or the related code section. Is the above paragraph a true statement? **If not, why not?**

10. The discussion then continues concerning Federal Tax Lien documents, again the lack of "Substantive Regulation" relative to Federal Tax Liens becomes a stumbling block to the Court's determination. Are "substantive regulations" as defined by the APA and the U.S. Supreme Court, required to support the publication of a Notice of Federal Tax Lien? **If not, why not?**

11. The Congress created and passed in the Uniform Commercial Code (UCC); 1) the requirement that a valid UCC-1 Form be filed upon which is shown the alleged debtor's signature and the creditor's signature (without these two signatures on the UCC-1, there is an invalid Notice of Lien; 2) there must be a financing statement/security agreement signed by

the alleged debtor and the secured party, the IRS agent, as specified by Section 9 – 402 of the

UCC, the financing statement is also mentioned in section 9 – 403; and 3) there must be a

valid court order , based on a court judgment wherein the alleged debtor has had due process

opportunity to contest the alleged debt. That court process is well founded in common law.

Without the instruments and due process, there is **no lawful authority** and the Notice of Lien

is **invalid**. Question: Are the statements made above true and applicable to the Plaintiffs? **If

not, why not?**

12. If the statements above are true and this Court is now fully aware of the invalid and defective

Liens filed in the Public Record, does this Court have an obligation to rule *sua sponte* that the

Liens be expunged and removed? **If not, why not?**

13. Publication in the Federal Register on November 14, 1990, Vol 55, No 220, page 47644,

Section 70.232 confirms the validation that the IRS agent needs in filing a Notice of Lien.

Mentioned are the Court ordered judgment and the security interest document. The IRS

MUST follow this published procedure, as no exemption was provided for the IRS in UCC

Section 9 – 302 and no other exemption is known to exist elsewhere in the law. Therefore,

IRS must also comply with the Laws of Congress, as written. Are the requirements published

in the Federal Register official and, therefore, suitable to be relied upon by the private

individuals who are Plaintiffs in this case? **If not, why not?**

14. In the "Standards Section" the Court acknowledges that "unless it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief". Unless the Court has made the Administrative decision that the IRS does not have to

adhere to and follow the U.S. Constitution and the Bill of Rights, the laws of Congress, U.S.

Supreme Court Rulings, and Publications of the IRS previously cited, the facts placed on the

record by the Plaintiffs and un-refuted by the Defendant overwhelmingly support the claim

made by the Plaintiffs. To find otherwise, the Court would have to ignore a myriad of U.S.

Supreme Court rulings, Laws created and passed by Congress, published regulations and

overt acts contrary to the law by the IRS and its agents. The APA, supported by the U.S.

Supreme Court decisions leads to the invalidity of the Notices of Federal Tax Lien that

contain data that violates the Privacy Act by revealing "tax return information" which triggers

the penalty created by Congress of $1,000.00 per occurrence at 26 USC § 7431. The dots

from start to finish in the Plaintiff's claim are just that easy to connect and the Defendant has

not refuted a single set in this process, instead the Defendant has relied on this administrative

courts normal bias to protect the illegal activities of the IRS. Question: Are the above

statements in this paragraph a true representation of the the law and the facts in this case? **If**

**not, why not?**

15. Next, this Court has shown and documented its bias. The DOJ has presented absolutely no

evidence that they are entitled to represent the IRS in this court action.  No proof or evidence of Agency status has been entered into the record and it clearly has been challenged.  Instead of ordering the DOJ to provide evidence and proof on the record that the IRS is an agency (as discussed above in the relative paragraphs), this Court has reverted to its tired and tried and true procedure of calling items that it cannot address as "frivolous".  Question: Is the above paragraph true?  **If not, why not?**

16. Next, the Court addresses an alleged violation of the Federal Procedure, relating that the pleading is required to contain a "short and plain statement of the claim".  The Court has requested an impossible task unless the Plaintiffs were to file multiple lawsuits documenting one egregious unlawful act per document (Defendants believe that would be a terrible waste of the Court's resources).  The short, clear statement was made that the other Plaintiffs were harmed in the same manner as Bosset with actions leading to Privacy Act violation.  The presentation of the evidence for each of the other Plaintiffs would have amounted to 10 pages or more for each Plaintiff or 400 plus pages total.  Instead the violations against Bosset were enumerated and the simple statement made equating the damages to the other Plaintiffs to the damages Bosset incurred. Nothing short of 400 pages plus would have described the damages to the other Plaintiffs.  Question: Did Bosset err by not describing the violations of the law by IRS in detail, thus not providing a clear, short statement?  Does this Court find the statements

made in this paragraph true?  **If not, why not?**

17. Next, the court discusses whether or not the IRS is a proper party.  Until evidence exists on

the record that the IRS is an agency of the federal government the question is moot.  Until

then the actions of the IRS are that of an independent collection agency.  Therefore, lacking

evidence to the contrary, the IRS was sued as a corporate organization.  This court should note

that no evidence, affidavit or other document was presented to the court refuting Plaintiffs

allegation(s).  As a result under the Court's own rules, Federal Rules of Evidence Rule 301 the

Rule of Presumption, the allegation(s) must stand until refuted.  This was previously

presented to the Court and is evidence that this Court is acting in an administrative capacity

and is ignoring its rules unless the IRS/DOJ raises the rule (see the violation of Federal rules

cited above).  Such disparity of action and application of the rules can only lead to the image

that this Court cannot be relied upon to dispense "justice" but is simply an administrative

tribunal acting in an administrative capacity rather than a judicial capacity.  Question: Is this

Court acting in an administrative capacity as opposed to a judicial capacity?  **If not, why not?**

18. The Court then reflects that IRS has not been authorized by Congress to be sued.  Bosset

would also observe that Congress has not, by law, authorized the IRS to exist as a government

protected entity.  What evidence or law exists that makes and identifies the IRS as an entity

with agency, thus "protected" status?  Is not the absolute lack of agency status in laws passed

by Congress the absolute test of agency status notwithstanding the assumptions made by this Court? **If not, why not?**

19. An agency of the Federal government can only arise from the U. S. Constitution or can only be created by a law passed by Congress and in no other procedure including the decision or assumption of any Court. Is the preceding statement true? **If not, why not?**

20. The U.S. Supreme Court's decision in *Chrysler v. Brown supra* determined that there was no evidence that IRS is an agency of the federal government. In holding that and ruling as if the IRS is an agency of the federal government, is this Court actively defying and ignoring the adjudged decisions of the U.S. Supreme Court? **If not, why not?**

21. Title 31 U.S.C. contains the identities of the bureaus created in the Treasury Department by the Congress. Does the absence of IRS from that list indicate that Congress has not recognized IRS as an agency of the Federal Government? **If not, why not?**

22. The following statement appears in the Code of Federal Regulations: **Title 26 CFR 601.101** "Introduction. (a) General. *__The Internal Revenue Service is a bureau of the Department of the Treasury under the immediate direction of the Commissioner of Internal Revenue. The Commissioner has general superintendence of the assessment and collection of all taxes imposed by any law providing internal revenue. The Internal Revenue Service is the agency by which these functions are performed.__*" There is no known authorization for an

agency to be created by declaration in a CFR. 26 CFR 601.101 is at best an internal document of the Treasury Department without applicability to the average American citizen, because it lacks the "substantive regulations" required by the APA. Are the preceding two statements true? **If not, why not?**

23. Next, sovereign immunity is discussed. There can be no mistake as to the clear words and intent of Congress regarding sovereign immunity when the court considers the jurisdictional statement contained in Doc. No. 19 (page 2). Jurisdiction arises under the unambiguous statutory language of 5 U.S.C. § 551(a)(1), a federal question authorized at 28 U.S.C. § 1331 as the United States waives its sovereign immunity under 5 U.S.C. §§ 701-706. Further, judicial review of IRS action is not precluded by statute foreclosing it under 5 U.S.C. § 701(a) (1) for all agents, agencies and courts in this case. Question: Do the above cites in 5 U.S.C. and 28 U.S.C. provide an unambiguous jurisdictional statement? **If not, why not?**

24. As stated previously, the statutes provide an incredibly adequate waiver of its sovereign immunity under 5 U.S.C. §§ 701-706. **If not, why not?**

25. The court then asserts that Section 702 allows only equitable relief not monetary damages. Further quoting, "Plaintiff does not seek injunctive relief against Defendants". This Court now appears to be arguing that it erred when it denied injunctive relief requested by Plaintiffs in Doc. No. 19, as the court then goes on to say that the Anti-Injunction Act prohibits the

injunctive relief requested by the Plaintiffs. The court appears to be arguing that IRS has full authority to violate the law, i.e., the Privacy Act, with complete immunity to any repercussions. Question: Does the IRS have full immunity relative to the laws of Congress or are they subject to the laws of Congress? **If not, why not?**

26. Next, the Court claims that they do not have jurisdiction under the APA based on the tenuous argument made by the Court about the Anti-Injunction Act. To rule in that manner the Court would have to ignore the absolute violation of the law and decisions of the U.S. Supreme Court regarding "substantive regulations". Nothing in the Anti-Injunction Act, which appears to be the core of that decision, grants an exception to the APA or the "substantive regulation" requirements in *Chrysler v. Brown supra*. Question: Has the Court manufactured a "safe harbor" for the IRS to continually violate the laws of Congress and due process by making this decision? **If not, why not?**

27. The Court then asserts that the Notices of Federal Tax Liens ("NFTL") including tax return information is authorized by 26 U.S.C. § 6103(k)(6). This argument would be valid, if there was authorization to issue the NFTL in any law passed by Congress that applies to the normal American citizen, such as the Plaintiffs. Without the APA and *Chrysler v. Brown supra* being ignored by the Court, there is no authorization for the IRS agent to issue the NFTL to anyone but a government employee due to the lack of "substantive regulations". Is the previous

sentence true? **If not, why not?**

28. The general rule cited by the Court can only apply if the Liens and Levies were valid in the first place. As noted above, the Liens and Levies are clearly defective. Being defective there is no place for the Liens and Levies to hide that will correct their defects and their clear violation of the Privacy Act. Question: Are the statements in this paragraph true? **If not, why not?**

29. The Court then discusses the Federal Tort Claims Act (FTCA) and then the Court determines that the FTCA does not apply to the assessment or collection of any tax. Section 2680(c) provides no exception to the Tort Claims Act for illegal activities of the IRS and there is no legal authority under the UCC for the IRS to file an invalid Lien or Levy without complying with the requirements of the UCC. There simply is no exception in the UCC for the IRS actions that would bar them under the FTCA. Question: Does this Court have to apply all of the laws of Congress or just selectively the ones that protect the IRS illegal actions? **If not, why not?**

30. The Court then discusses the cases of Wexler and Prater. The last time Plaintiff checked legal procedure the Wexler and Prater cases would be un-applicable and un-citable, inasmuch as they were not from a superior court. Question: Is the above statement true? **If not, why not?**

31. The references to Bosset and Prater injunction suits is especially tenuous as it would appear

that this Court believes that any action of the IRS must be legal. Under no circumstances can the injunctive relief awarded by the court be construed to grant IRS *carte blanche* to violate the laws of Congress, U.S. Supreme Court decisions, the U.S. Constitution, etc. Perhaps this Court would like to read beyond Doc. No. 86 in the Bosset injunction case. In doing so the Court will find Doc. No. 88, an offer of proof (certified documents from the State of Florida concerning territorial jurisdictional transferred to the federal government). This docket entry provides the basis for challenging the jurisdiction of the Court based on the U.S. Constitution requirement at Article I, Section 8, Clause 17 concerning jurisdiction. A review of the documents through the end of the docket report will reveal no valid answer to the challenge to the jurisdiction of this Court. Subsequent to that challenge, Bosset discovered Section 664 of the DOJ Criminal Resource Manual (see the attached Memorandum) which clearly and with unambiguous terms defines that the DOJ lacks jurisdiction in criminal cases. Question: How did the DOJ obtain jurisdiction in this case when they freely admit (in print in their own publications) that they lack territorial jurisdiction? If the DOJ does not have jurisdiction, how was jurisdiction acquired by the IRS? Based on the DOJ publication discussed above, especially Section 664 quoted in the enclosed Memorandum, is the DOJ barred by territorial jurisdiction limitations from appearing in this case? **If not, why not?**

32. The Liens filed against Bosset were based in part on penalties assigned by IRS agents,

because Bosset filed 941 forms for his company.  Other penalties were applied for allegedly

assisting persons unknown to Bosset.  When Bosset requested an explanation, the request was

refused.  When Bosset summoned the agents for a deposition to explain the amounts, this

Court issued a Protective Order preventing Bosset from receiving an answer.  Has this Court

by its action, actively participated in denying Due Process to Bosset and the other Plaintiffs?

**If not, why not?**

33. This Court identifies the Complaint filed by Plaintiffs McKay, Guthery and Roberts as "an

identical complaint".  Yet the Court refused to accept their complaint due to alleged "defects"

in the pleadings.  Did the Court deny due process to McKay, Guthery and Roberts when

refusing to accept their complaint when "an identical complaint" was active in the Bosset

case?  **If not, why not?**

34. McKay, Guthery and Roberts immediately and nearly simultaneously joined the Bosset

lawsuit as co-plaintiffs after the Court refused to accept their "identical complaint".  Was this

a correct procedure for McKay, Guthery and Roberts to obtain due process in the process of

seeking justice?  **If not, why not?**

35. The Order at Doc. No. 53 denied the Plaintiff's motion to change Venue to the Court of

International Trade in New York City.  Question: Was that request a proper request?  **If not,**

**why not?**

# CONCLUSIONS

36. A review of the above enumerated questions above reveals a pattern. This Court has ignored a significant number of laws passed by Congress, U.S. Supreme Court rulings, rules of the Court and guarantees from the U.S. Constitution that properly applied would provide "justice" for the Plaintiffs. Is the proceeding statement true? **If not, why not?**

37. Based on the above logical answers and clarifications, after reviewing the fact on the record in this case, does this Court find merit in the Plaintiffs Motion to consider Reversing the Order of Dismissal? **If not, why not?**

38. In view of the previous discussion of Section 664 of the U.S. Attorney's Manual, does this Court find merit in striking all DOJ authored responses in this Case? **If not, why not?**

39. In view of the obvious trespass by the DOJ on this case, and the resultant striking of the DOJ responses, is this Court required to declare default judgment in favor of the Plaintiffs? **If not, why not?**

40. Based on the default judgment clearly due the Plaintiffs, because of the stricken answers, is the calculation of damages submitted with Doc. No. 39, exhibit "G" valid? **If not, why not?**

41. Are the calculated damages awarded Plaintiffs? **If not, why not?**

(continued next page)

Respectfully Submitted,

David Bosset
10352 Lafoy Road
Spring Hill, Florida 34608
352-684-4470
352-683-2542 Fax

Certificate of Service

I hereby certify that on March 21 , 2006, I mailed a true and correct copy of the above and foregoing  PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER OF DISMISSAL AND PLAINTIFFS' THIRD MOTION FOR CLARIFICATION.

TO:
Carol Koehler Ide
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 14198
Ben Franklin Station
Washington, D.C. 20044

David Bosset

# MEMORANDUM OF UNDERSTANDING
# REGARDING TERRITORIAL JURISDICTION

## PRELIMINARY STATEMENT

The IRS lacks territorial jurisdiction.  The current system of enforcement of the Internal Revenue Code, Subtitle A and C is repugnant to and violative of Article I, Section 8, Clause 17 of the Constitution and its implementing statute, 40 USC 255.

## FACT

## IRS LACKS TERRITORIAL JURISDICTION

The Constitution is <u>unambiguous</u> about defining WHAT Congress is authorized to do and WHERE they can do it.  The IRS cannot tax where the US cannot legislate.

Specifically with respect to "where" Congress enjoys legislative, i.e., police/taxing jurisdiction, the Constitution reads:

> "To exercise exclusive legislation in all cases whatsoever, over such District (not exceeding ten miles square) as may, by cession of particular states, and the acceptance of Congress, become the seat of the government of the United States, and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings;" <u>Constitution: Article I, Section 8, Clause 17</u>

The Department of Justice's own Criminal Resource Manual documents the true limits of the DOJ's police authority:

664 Territorial Jurisdiction

Of the several categories listed in 18 U.S.C. § 7, Section 7(3) is the most significant, and provides:

The term "special maritime and territorial jurisdiction of the United States," as used in this title, includes: . . . (3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

As is readily apparent, this subsection, and particularly its second clause, bears a striking resemblance to the 17th Clause of Article I, Sec. 8 of the Constitution.  This clause provides:

"The Congress shall have power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."  (Emphasis added.)

The constitutional phrase "exclusive legislation" is the equivalent of the statutory expression "exclusive jurisdiction."  See James v. Dravo Contracting Co., 302 U.S. 134, 141 (1937), citing, Surplus Trading Co. v. Cook, 281 U.S. 647, 652 (1930).

Until the decision in Dravo, it had been generally accepted that when the United States acquired property with the consent of the state for any of the enumerated purposes, it acquired exclusive jurisdiction by operation of

law, and any reservation of authority by the state, other than the right to serve civil and criminal process, was inoperable. See Surplus Trading Co. v. Cook, 281 U.S. at 652-56. When Dravo held that a state might reserve legislative authority, e.g., the right to levy certain taxes, so long as that did not interfere with the United States' governmental functions, it became necessary for Congress to amend 18 U.S.C. § 7(3), by adding the words "so as," to restore criminal jurisdiction over those places previously believed to be under exclusive Federal legislative jurisdiction. See H.R. Rep. No. 1623, 76th Cong., 3d Sess. 1 (1940); S. Rep. No. 1788, 76th Cong., 3d Sess. 1 (1940).

Dravo also settled that the phrase "other needful buildings" was not to be strictly construed to include only military and naval structures, but was to be construed as "embracing whatever structures are found to be necessary in the performance of the function of the Federal Government." See James v. Dravo Contracting Co., 302 U.S. at 142-43. It therefore properly embraces courthouses, customs houses, post offices and locks and dams for navigation purposes.

The "structures" limitation does not, however, prevent the United States from holding or acquiring and having jurisdiction over land acquired for other valid purposes, such as parks and irrigation projects since Clause 17 is not the exclusive method of obtaining jurisdiction.

The United States may also obtain jurisdiction by reserving it when sovereign title is transferred to the state upon its entry into the Union or by cession of jurisdiction after the United States has otherwise acquired the property.  See Collins v. Yosemite Park Co., 304 U.S. 518, 529-30 (1938); James v. Dravo Contracting Co., 302 U.S. at 142; Surplus Trading Co. v. Cook, 281 U.S. at 650-52; Fort Leavenworth R.R. Co. v. Lowe, 114 U.S. 525, 526-27, 538, 539 (1885).

The United States may hold or acquire property within the borders of a state without acquiring jurisdiction.  It may acquire title to land necessary for the performance of its functions by purchase or eminent domain without the state's consent.  See Kohl v. United States, 91 U.S. 367, 371, 372 (1976). But it does not thereby acquire legislative jurisdiction by virtue of its proprietorship. The acquisition of jurisdiction is dependent on the consent of or cession of jurisdiction by the state. See Mason Co. v. Tax Commission, 302 U.S. 97 (1937); James v. Dravo Contracting Co., 302 U.S. at 141-42.

State consent to the exercise of Federal jurisdiction may be evidenced by a specific enactment or by general constitutional or statutory provision. Cession of jurisdiction by the state also requires acceptance by the United States.  See Adams v. United States, 319 U.S. 312 (1943); Surplus Trading

Co. v. Cook, 281 U.S. at 651-52.

Whether or not the United States has jurisdiction is a Federal question. See Mason Co. v. Tax Commission, 302 U.S. at 197.

Prior to February 1, 1940, it was presumed that the United States accepted jurisdiction whenever the state offered it because the donation was deemed a benefit. See Fort Leavenworth R.R. Co. v. Lowe, 114 U.S. at 528. This presumption was reversed by enactment of the Act of February 1, 1940, codified at 40 U.S.C. § 255. This statute requires the head or authorized officer of the agency acquiring or holding property to file with the state a formal acceptance of such "jurisdiction exclusive or partial as he may deem desirable," and further provides that in the absence of such filing "it shall be conclusively presumed that no such jurisdiction has been acquired." See Adams v. United States, 319 U.S. 312 (district court is without jurisdiction to prosecute soldiers for rape committed on an army base prior to filing of acceptance prescribed by statute). The requirement of 40 U.S.C. § 255 can also be fulfilled by any filing satisfying state law. United States v. Johnson, 994 F.2d 980, 984-86 (2d Cir. 1993). The enactment of 40 U.S.C. § 255 did not retroactively affect jurisdiction previously acquired. See Markham v. United States, 215 F.2d 56 (4th Cir.), cert. denied, 348 U.S. 939 (1954); United States v. Heard, 270 F. Supp. 198, 200 (W.D. Mo. 1967).

In summary, the United States may exercise plenary criminal jurisdiction over lands within state borders:

1. Where it reserved such jurisdiction upon entry of the state into the union;

2. Where, prior to February 1, 1940, it acquired property for a purpose enumerated in the Constitution with the consent of the state;

3. Where it acquired property whether by purchase, gift or eminent domain, and thereafter, but prior to February 1, 1940, received a cession of jurisdiction from the state; and

4. Where it acquired the property, and/or received the state's consent or cession of jurisdiction after February 1, 1940, and has filed the requisite acceptance.

> U.S. DOJ Criminal Resource Manual
> October 1997 Section 664

The police power is vested in the States and not the federal government. See Wilkerson v. Rahrer, 140 U.S. 545, 554, 11 S.Ct. 865, 866 (1891) (the police power "is a power originally and always belonging to the States, not surrendered to them by the general government, nor directly restrained by the constitution of the United States, and essentially exclusive"); Union National Bank v. Brown, 101 Ky. 354, 41 S.W. 273 (1897); John Woods & Sons v. Carl, 75 Ark. 328, 87 S.W. 621, 623 (1905); Southern Express Co. v. Whittle, 194 Ala. 406, 69 So.2d 652, 655 (1915); Shealey v. Southern Ry. Co., 127 S.C. 15, 120 S.E. 561, 562 (1924) ("The police power under the American constitutional system has been left to the states. It has always belonged to them and was not surrendered by them to the general government, nor directly restrained by the constitution of the United States . . . Congress has no general power to enact police regulations operative

within the territorial limits of a state"); and <u>McInerney v. Ervin</u>, 46 So.2d 458, 463 (Fla. 1950).

"No sanction can be imposed absent proof of jurisdiction." <u>Standard v. Olson</u>, 74 S.Ct. 768. "It has also been held that jurisdiction must be affirmatively shown and will not be presumed." <u>Special Indem. Fund v. Prewitt</u>, 205 F2d 306, 201 OK. 308.

Even the IRS's own CID manual shows it does not have jurisdiction inside the fifty states:

> "The Criminal Investigative Division enforces the criminal statutes applicable to income, estate, gift, employment, and excise tax laws involving United States citizens residing in foreign countries and non-resident aliens subject to federal income tax filing requirements." IRS Criminal Investigation Division

The Supreme Court says the government has an obligation to ascertain bona fide authority: "Anyone entering into an arrangement with the government takes the risk of having accurately ascertained that he who purports to act for the government stays within the bounds of this authority." <u>Federal Crop Insurance v. Merrill</u>, 33 U.S. 380 at 384 (1947).

The Federal Rules of Civil Procedure even states there is no jurisdiction inside the States: " 'Act of Congress' includes any act of Congress locally applicable to and in force in the District of Columbia, in Puerto Rico, in a territory or in an insular possession." See 18 USC, Rule 54 of the Federal Rules of Criminal Procedure. <u>Note</u>: There is NO reference to the 50 "states."

The IRS must establish jurisdiction or it will be sanctioning FRAUD:

"Silence is a species of conduct, and constitutes an implied representation of the existence of facts in question. When silence is of such character and under such circumstances that it would become a fraud, it will operate as an Estoppel." Carmine v. Bowen, 64 U.S. 932.

"Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading. . . . We cannot condone this shocking conduct by the IRS. Our revenue system is based upon the good faith of the taxpayers and the taxpayers should be able to expect the same from government in its enforcement and collection activities. . . . This sort of deception will not be tolerated and if this is the 'routine' it should be corrected immediately." [U.S. v. Tweel, 550 F.2d 297, 299 (1977)] [quoting U.S. v. Prudden, 424 F.2d 1021, 1032 (1970)]

The USC codifies the Constitutional requirement at Article I, Section 8, Clause 17 and proscribes the procedure and required documentation for the federal government to successfully assert jurisdiction inside one of the fifty states.  To wit: 40 USCS § 255 (now 3111 and 3112) clearly and specifically requires that a "notice of acceptance" is to be filed "with the Governor of such State or in such manner as may be prescribed by the laws of the State where such lands are situated."  "Such lands," of course, referring to those lands that the federal government, through its agents, is claiming exclusive or concurrent jurisdiction over the people living thereon.

The text of § 255 concludes with the statement "Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted." [Emphasis added]

Obviously, if the requirements of Article I, Section 8, Clause 17 of the Constitution of the United States are not complied with, and/or if the procedural requirements of 40 USCS § 255 are not complied with, then no public servant who is acting as an agent of the United States, i.e., the federal government, has any bona fide authority whatsoever to attempt to force compliance with any federal law, rule, code, statute, etc. on anyone living in such an area that is not subject to any bona fide jurisdiction of the federal government.

In support of this rather obvious conclusion, the second paragraph of interpretive note 14 of 40 USCS § 255 says: "In view of 40 USCS § 255, no jurisdiction exists in United States to enforce federal criminal laws, unless and until consent to accept jurisdiction over lands acquired by United States has been filed in behalf of United States as provided in said section, and fact that state has authorize government to take jurisdiction is immaterial.   Adams v. United States (1943) 319 US 312, 87 L Ed 1421, 63 S Ct 1122." (plaintiff's emphasis)

[Federal jurisdiction] " . . . must be considered in the light of our dual system of government and may not be extended . . . in view of our complex

society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government." <u>United States v. Lopez</u>, 514 U.S. 549, 115 S.Ct. 1624 (1995).